No. 03-119

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 252N

IN THE MATTER OF CUSTODY

AND PARENTING RIGHTS OF C.S.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. AND 2001-12,
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    John Moog, Assistant Public Defender, Helena, Montana

    For Respondent:

    Honorable Mike McGrath, Attorney General; Tammy K. Plubell,
Assistant Attorney General, Helena, Montana

    Leo Gallagher, County Attorney; Carolyn A. Clemens, Deputy
County Attorney, Helena, Montana

    Randi M. Hood, Chief Public Defender, Helena, Montana (For Youth)

Submitted on Briefs:  August 11, 2004

Decided:   September 14, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court

¶1     Pursuant to Section I, Paragraph 3(d)(i), Montana Supreme Court 1996 Internal Operating Rules (Memorandum Opinions), we determine that the legal issues raised in this appeal are clearly controlled by settled Montana law.  Further, pursuant to Section I, Paragraph 3(d)(v), the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     C.C. appeals from the order of the District Court terminating parental rights of C.S. pursuant to § 41-3-609, MCA (2001).  We affirm.

## BACKGROUND

¶3     C.S. was born to C.C., her mother, and P.S., her father, in August 1992.  On the morning of March 27, 2001, C.S. was unable to wake C.C. after C.C. had overdosed on methadone.  An ambulance took C.C. to the hospital.

¶4     When the Department of Public Health and Human Services (DPHHS) was notified, it sought, and C.C. signed, a Voluntary Safety Plan.  The plan provided, *inter alia*, that C.C. would enter an inpatient chemical dependency treatment and stated that her failure may result in DPHHS filing for temporary legal custody of C.S.  C.C. entered treatment on April 9, 2001, and left against the advice of the staff three days later.

¶5     On April 18, 2001, the District Court entered an order granting DPHHS temporary investigative authority, protective services, and temporary custody of C.S. for six months. The parties stipulated C.S. is a youth in need of care.

2

¶6 On October 23, 2001, the District Court extended temporary legal custody to DPHHS, but returned C.S. to C.C.'s care upon C.C.'s adherence to conditions, among which, C.C. shall not use alcohol or any other drug not specifically prescribed to her by a court-ordered doctor and DPHHS may conduct random drug and alcohol testing. Eight days later C.C. tested positive for opiates, and DPHHS removed C.S. from C.C.'s home on November 1, 2001.

¶7 Meanwhile, in addition to her three-day inpatient treatment which began on April 9, 2001, C.C. entered three more inpatient chemical dependency centers for treatment: on April 22, 2001, on May 13, 2001, and on November 23, 2001. Each time, C.C. left after only a few days of treatment and against the staff's advice. C.C. also entered numerous out-patient chemical dependency treatment programs with no success. The doctors and staff of at least three of these facilities testified that C.C. had no control over her drug habits. To explain her multiple failures, one doctor cited C.C.'s "[u]nwillingness to affect [sic] behavioral change, no desire to change her drug seeking habits and her continual search for the drugs that she needed, and continual fault finding with state agencies rather than accepting responsibility for her past actions."

¶8 The District Court postponed another permanent custody hearing so C.C. could complete her current chemical dependency treatment. When the father, P.S., failed to appear at the permanent custody hearing, the District Court terminated his parental rights on August 12, 2002. Shortly thereafter, C.C. decided to relinquish custody and allow DPHHS to place C.S. with C.C.'s brother and sister-in-law. After C.C. changed her mind and decided not to

3

relinquish custody voluntarily, the District Court held a hearing on October 21, 2002, and terminated C.C.'s parental rights pursuant to § 41-3-609, MCA (2001).

## DISCUSSION

¶9 "[A] natural parent's right to care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures." *Matter of A.T.*, 2003 MT 154, ¶ 10, 316 Mont. 255, ¶ 10, 70 P.3d 1247, ¶ 10. "The party seeking to terminate an individual's parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met." *Matter of A.T.*, ¶ 10. "To satisfy the relevant statutory requirements for terminating a parent-child relationship, a district court must make specific factual findings. We review those findings of fact to determine whether they are clearly erroneous." *Matter of D.V.,* 2003 MT 160, ¶ 14, 316 Mont. 282, ¶ 14, 70 P.3d 1253, ¶ 14. "A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake." *Matter of A.T.*, ¶ 9. Last, we determine whether the district court's conclusions of law are correct. *Matter of A.T.*, ¶ 9.

¶10 Section 41-3-609, MCA (2001), sets forth the criteria for termination of parental rights. The court may terminate "the parent-child legal relationship upon a finding established by clear and convincing evidence . . . that the child is an adjudicated youth in need of care and both of the following exist: (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful;

and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Section 41-3-609(f), MCA.

¶11 The statutory requirements for termination of parental rights are satisfied in the present case. Section 41-3-609(f), MCA. The parties stipulated that C.S. was a youth in need of care. Clear and convincing evidence supports the District Court's decision that C.C. did not successfully complete all terms of her parenting plan and that the conduct or condition that rendered C.C. unfit is unlikely to change within a reasonable time. *Matter of A.T.*, ¶ 10.

¶12 We review a district court's decision to terminate parental rights to determine whether the court abused its discretion. *Matter of A.T.*, ¶ 9. "The test for an abuse of discretion is whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *Matter of D.V.*, ¶ 14 (citation and internal quotations omitted). C.C. has failed to show that the court abused its discretion; no finding of fact was clearly erroneous and no conclusion of law was incorrect. *Matter of A.T.*, ¶ 9. Accordingly, we affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON